# TAX COURT OF NEW JERSEY

**JOSHUA D. NOVIN**
**Judge**



Dr. Martin Luther King, Jr. Justice Building
495 Dr. Martin Luther King, Jr. Blvd., 4th Floor
Newark, New Jersey 07102
Tel: (609) 815-2922, Ext. 54680

**NOT FOR PUBLICATION WITHOUT THE APPROVAL
OF THE TAX COURT COMMITTEE ON OPINIONS**

July 2, 2026

Michael I. Schneck, Esq.
Schneck Law Group LLC
23 Vreeland Road, Suite 270
Florham Park, New Jersey 07932

William R. Betesh, Esq.
Boggia, Boggia & Betesh, LLC
71 Mt. Vernon Street
Ridgefield Park, New Jersey 07660

   Re: <u>Liberty Street Apartments LLC v. Little Ferry Borough</u>
      Docket Nos. 006608-2023; 004640-2024; 005457-2025

Dear Mr. Schneck and Mr. Betesh:

This letter shall constitute the court's opinion following trial of the 2023, 2024, and 2025 local property tax appeals instituted by plaintiff, Liberty Street Apartments LLC ("Liberty Street").

Liberty Street is the owner of the real property and improvements located at 406-444 Liberty Street, Little Ferry Borough, Bergen County, New Jersey (the "subject property"). The subject property is identified on the municipal tax map of Little Ferry Borough ("Little Ferry"), as block 6.01, lot 1.

At the commencement of trial, Liberty Street and Little Ferry stipulated to the following matters: (i) the qualifications of each proposed expert witness; (ii) the subject property's highest and best use; (iii) that the income capitalization approach is the most appropriate method to derive a value for the subject property; and (iv) the subject property's net operating income as of October 1, 2022, October 1, 2023, and October 1, 2024. Therefore, the sole issue remaining in dispute at trial was the capitalization rates that should be applied to the subject property's net operating






income.[1]

For the reasons stated more fully below, the court will enter judgments: (i) affirming the subject property's 2023 and 2024 tax year assessments, and dismissing Liberty Street's complaints and Little Ferry's counterclaims; and (ii) reducing the subject property's 2025 tax year assessment.

## I.  Procedural History and Factual Findings

Pursuant to R. 1:7-4, the court makes the following findings of fact and conclusions of law based on the evidence and testimony offered during trial.

The real property consists of a narrow rectangular-shaped parcel comprising 1.171-acres or 51,008 square feet.  The real property is improved with two brick two-story garden-style apartment buildings, constructed in 1963, containing a total of forty-four (44) units and a surface parking lot for approximately fifty-eight vehicles.[2]  The buildings have a gross area of approximately 29,698 square feet.  Several apartment units were renovated approximately 10 years

---

[1]  At conclusion of trial the court addressed a legal issue involving the equalization ratios that should be applied for each tax year at issue under a "district-wide reassessment program."  The court highlighted the inconsistencies between the trial testimony, the New Jersey Division of Taxation's published Tables of Equalized Valuations (Chapter 123 equalization ratios), and the Final Equalization Tables for the County of Bergen for the 2023, 2024, and 2025 tax years; and the lack of clarity between N.J.S.A. 54:51A-6 and N.J.S.A. 54:4-23.  According to Little Ferry, a 100% equalization ratio should be applied to each year.  However, the Division of Taxation's published Table of Equalized Valuations reflects that Little Ferry has an equalization ratio of: (i) 81.78%, as of 10/1/2022; (ii) 84.77%, as of 10/1/2023; and (iii) 86.84%, as of 10/1/2024.  Moreover, the County of Bergen's published Final Equalization Tables reflect that: (i) a 94.30% ratio is applied to Little Ferry for county expenses the 2023 tax year; (ii) a 96.83% ratio is applied to Little Ferry for county expenses for the 2024 tax year; and (iii) a 95.95% ratio is applied to Little Ferry for county expenses for the 2025 tax year.  Following trial, the court conducted a series of telephone conference calls with counsel on the record to address this issue.  On June 30, 2026, Liberty Street's counsel and Little Ferry's counsel stipulated that: (i) for the 2023 tax year a tax rate of $2.74 and average equalization ratio of 92.60% should be applied; (ii) for the 2024 tax year a tax rate of $2.50 and average equalization ratio of 94.61% should be applied; and (iii) for the 2025 tax year a tax rate of $2.44 and average equalization ratio of 94.69% should be applied.
[2]  Liberty Street's expert opined that the subject property's improvements were built in the 1950's.






ago, and several apartment units have undergone more recent renovations.

Liberty Street filed complaints challenging the subject property's 2023, 2024, and 2025 tax years assessments, and Little Ferry filed counterclaims challenging the subject property's 2023, 2024, and 2025 tax year assessments.

During trial, Liberty Street and Little Ferry each offered testimony from New Jersey certified general real estate appraisers, who were accepted by the court, without objection, as experts in the real property valuation field (the "expert" or "experts"). The experts prepared appraisal reports expressing their opinions of the subject property's true or fair market value as of the October 1, 2022, October 1, 2023, and October 1, 2024 valuation dates. The appraisal reports contained numerous photographs of the subject property's interior and exterior and were moved into evidence.

As of each valuation date at issue, the subject property's tax assessments, the stipulated average equalization ratios, the subject property's implied equalized value, and each expert's value conclusion are set forth below:

| Valuation date | Tax assessment | Stipulated average ratio of assessed to true value | Implied equalized value | Liberty Street's expert | Little Ferry's expert |
|---|---|---|---|---|---|
| 10/1/2022 | $4,796,200 | 92.60% | $5,179,482 | $4,500,000 | $5,519,900 |
| 10/1/2023 | $4,970,500 | 94.61% | $5,253,673 | $4,490,000 | $5,960,000 |
| 10/1/2024 | $5,653,100 | 94.69% | $5,970,113 | $4,800,000 | $5,695,400 |

The testimony elicited during trial, along with the appraisers' photographs, depict well-maintained garden apartment buildings. The photographs of the representative apartment units disclose attractive vinyl composite flooring in the kitchen, hardwood flooring in the dining/living areas and bedrooms. The kitchens are nicely appointed with upper and lower painted shaker-style cabinetry, stainless steel appliances, and Formica style countertops. The kitchens are equipped






with a stainless-steel sink, combination range/oven, microwave oven, and a refrigerator.[3] The bathrooms feature ceramic wall and floor tiling, a toilet, a vanity with sink, a wall-mounted mirrored medicine cabinet, and a bathtub/shower. The interior walls and ceilings are finished with painted sheetrock/plaster. Heat is provided by hot water baseboard with natural gas fired boilers. Each apartment unit is supplied with one window air conditioning unit. In addition, the building's basement contains a laundry room with three washing machines and clothes dryers.

The subject property is located along Liberty Street between its intersection with West Gate Street and Backiel Street, near U.S. Route 46, in Little Ferry's R-M Multifamily Zoning District. The use of the subject property as a multi-family garden-style apartment complex is considered a legal, non-conforming use.

## II. Conclusions of Law

### A. Presumption of Validity

"Original assessments and judgments of county boards of taxation are entitled to a presumption of validity." MSGW Real Estate Fund, LLC v. Mountain Lakes Borough, 18 N.J. Tax 364, 373 (Tax 1998). "Based on this presumption, the appealing taxpayer has the burden of proving that the assessment is erroneous." Pantasote Co. v. Passaic Cty., 100 N.J. 408, 413 (1985). "The presumption of correctness . . . stands, until sufficient competent evidence to the contrary is adduced." Little Egg Harbor Twp. v. Bonsangue, 316 N.J. Super. 271, 285-86 (App. Div. 1998). A taxpayer can only rebut the presumption by introducing "cogent evidence" of true value. Pantasote Co., 100 N.J. at 413. That is, evidence "definite, positive and certain in quality and quantity to overcome the presumption." Aetna Life Ins. Co. v. Newark City, 10 N.J. 99, 105

---

[3] The appliances are furnished by Liberty Street.






(1952). Thus, at the close of the plaintiff's proofs, the court must be presented with evidence that raises a "debatable question as to the validity of the assessment." MSGW Real Estate Fund, LLC, 18 N.J. Tax at 376.

In evaluating whether the evidence presented meets the "cogent evidence" standard, the court "must accept such evidence as true and accord the plaintiff all legitimate inferences which can be deduced from the evidence." Id. at 376 (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995)). The evidence presented, when viewed under the Brill standard "must be 'sufficient to determine the value of the property under appeal, thereby establishing the existence of a debatable question as to the correctness of the assessment.'" West Colonial Enters, LLC v. East Orange City, 20 N.J. Tax 576, 579 (Tax 2003) (quoting Lenal Properties, Inc. v. City of Jersey City, 18 N.J. Tax 405, 408 (Tax 1999), aff'd, 18 N.J. Tax 658 (App. Div. 2000)). "Only after the presumption is overcome with sufficient evidence . . . must the court 'appraise the testimony, make a determination of true value and fix the assessment.'" Greenblatt v. Englewood City, 26 N.J. Tax 41, 52 (Tax 2011) (quoting Rodwood Gardens, Inc. v. Summit City, 188 N.J. Super. 34, 38-39 (App. Div. 1982)).

Hence, even in the absence of a motion to dismiss under R. 4:37-2(b), the court is nonetheless required to determine if the party challenging the tax assessment has overcome the presumption of validity. If the court concludes that the challenging party has not carried its burden, dismissal of the action is warranted under R. 4:40-1, and the trial court need not engage in an evaluation of the evidence to make an independent determination of value.

Here, affording Liberty Street all reasonable inferences that could be deduced from the evidence presented, the court finds that it produced cogent evidence sufficient to overcome the presumption of validity. Liberty Street's expert's opinions, if accepted by the court as true, raise






debatable questions as to the validity of the subject property's 2023, 2024, and 2025 tax year assessments.

### B.  Highest and Best Use

Liberty Street and Little Ferry stipulated to the subject property's highest and best use, as vacant, and as improved.  As vacant, for development as a multi-family apartment building, and as improved, for continuation of its present use as a multi-family apartment building.  Based on the evidence elicited during trial, the court finds such stipulation to be credible.

### C.  Valuation

Liberty Street and Little Ferry stipulated that the income capitalization approach is the most appropriate method to derive an estimate of the subject property's true or fair market value.  Based on the evidence elicited during trial, the court finds such stipulation to be credible.

Upon commencement of trial, Liberty Street and Little Ferry stipulated that, as of each valuation date, the subject property's Net Operating Income is:

| October 1, 2022 | October 1, 2023 | October 1, 2024 |
| --- | --- | --- |
| $430,000 | $447,000 | $475,000 |

Thus, the sole remaining issue in dispute is the capitalization rates (base and loaded) that must be applied to the subject property's net operating income to discern the subject property's true or fair market value.

### 1.  Capitalization

The direct capitalization technique is used "to convert an estimate of a single year's income expectancy into an indication of value in one direct step, either by dividing the net income estimate by an appropriate capitalization rate or by multiplying the income estimate by an appropriate factor."  Appraisal Institute, The Appraisal of Real Estate 491 (14th ed 2013); Prudential Ins. Co.






of Am. v. Parsippany-Troy Hills Twp., 16 N.J. Tax 58, 60 (Tax 1995), aff'd, 16 N.J. Tax 148 (App. Div. 1996); Hull Junction Holding Corp. v. Princeton Borough, 16 N.J. Tax 68, 80-81 (Tax 1996). Thus, the capitalization rate is the device that converts a property's net operating income into an estimate of market value.

Here, in deriving their capitalization rates, Liberty Street's expert and Little Ferry's expert employed the band of investment technique and reviewed published investor survey data.[4] The band of investment technique "is a form of 'direct capitalization' which is used 'to convert a single year's income estimate into a value indication.' The technique includes both a mortgage and an equity component." Hull Junction Holding Corp., 16 N.J. Tax at 80-81 (quoting Appraisal Institute, The Appraisal of Real Estate, 467 (10th ed 1992)).

To perform his band of investment technique Liberty Street's expert reviewed the American Council of Life Insurers Investment Bulletins ("ACLI") and engaged in discussions with a local bank's lending officer to derive his mortgage interest rates, loan amortization terms, and loan-to-value ratios.[5] To discern his equity dividend rates, Liberty Street's expert reviewed: (i) Real Estate Research Corporation's ("RERC") East Investment Criteria for Second-Tier and Third-Tier Investment Properties for apartments for the 3rd quarter 2022, 3rd quarter 2023, and 3rd quarter 2024: (ii) ACLI tables for the 3rd quarter 2022, 3rd quarter 2023, and 3rd quarter 2024; and (iii) PwC Real Estate Investor Surveys ("PwC Surveys"), Mid-Atlantic Region, for the 3rd quarter

---

[4] "[T]he Tax Court has accepted, and the Supreme Court has sanctioned, the use of data collected and published by the American Council of Life Insurance." Hull Junction Holding Corp., 16 N.J. Tax at 82-83. In addition, "[r]elevant data is also collected and published by . . . [PwC] Real Estate Investor Survey." Id. at 83. By scrutinizing and "analyzing this data in toto, the court can make a reasoned determination as to the accuracy and reliability of the mortgage interest rates, mortgage constants, loan-to-value ratios, and equity dividend rates used by the appraisers." Ibid.

[5] Liberty Street's expert did not produce copies of the ACLI tables, rather, he created tables with data fields that he apparently extracted from the ACLI tables.






2022, 3rd quarter 2023, and 3rd quarter 2024.[6]

Similarly, in performing the band of investment technique Little Ferry's expert reviewed: (i) the ACLI tables for the 3rd quarter 2022, 3rd quarter 2023, and 3rd quarter 2024; (ii) the PwC Surveys for the 3rd quarter 2022, 3rd quarter 2023, and 3rd quarter 2024; and (iii) a CoStar's Hackensack/Teaneck Multi-Family Submarket report, providing multi-family sales data from 2015 to 2025, to derive his mortgage interest rates, loan amortization terms, loan-to-value ratios, and equity dividend rates.

The following charts detail the components of the experts' band of investment analysis and their derived band of investment base capitalization rates as of each valuation date:

| October 1, 2022 valuation date | | | | | |
|---|---|---|---|---|---|
| | Interest rate | Loan-to-value ratio | Amortization period | Equity dividend rate | Base capitalization rate |
| Liberty Street's expert | 4.75% | 60% | 25 years | 6.75% | 6.80%[7] |
| Little Ferry's expert | 4.50% | 60% | 30 years | 3.50% | 5.05%[8] |

| October 1, 2023 valuation date | | | | | |
|---|---|---|---|---|---|
| | Interest rate | Loan-to-value ratio | Amortization period | Equity dividend rate | Base capitalization rate |
| Liberty Street's expert | 6.00% | 60% | 25 years | 7.00% | 7.45%[9] |
| Little Ferry's expert | 5.50% | 50% | 35 years | 3.50% | 5.00%[10] |

---

[6] The PwC Surveys for the 3rd quarter 2024 were not included in the appraisal report.

[7] 60% LTV x 6.84% constant = 4.104%; 40% x 6.75% = 2.70%; 4.104% + 2.70% = 6.804%.

[8] 60% LTV x 6.08% constant = 3.65%; 40% x 3.50% = 1.40%; 3.65% + 1.40% = 5.05%.

[9] 60% LTV x 7.73% constant = 4.638%; 40% x 7.00% = 2.80%; 4.638% + 2.80% = 7.438%.

[10] 50% LTV x 6.44% constant = 3.22%; 50% x 3.50% = 1.75%; 3.22% + 1.75% = 4.97%.






| October 1, 2024 valuation date | | | | | |
|---|---|---|---|---|---|
| | Interest rate | Loan-to-value ratio | Amortization period | Equity dividend rate | Base capitalization rate |
| Liberty Street's expert | 6.00% | 60% | 25 years | 7.00% | 7.45%[11] |
| Little Ferry's expert | 6.00% | 60% | 35 years | 4.50% | 5.90%[12] |

Thus, after engaging in the band of investment technique and reviewing and analyzing the data, Liberty Street's expert concluded a base capitalization rate of: (i) 6.80%, as of the October 1, 2022 valuation date; (ii) 7.45%, as of the October 1, 2023 valuation date; and (iii) 7.45%, as of the October 1, 2023 valuation date. In contrast, Little Ferry's expert concluded a base capitalization rate of: (i) 5.05%, as of the October 1, 2022 valuation date; (ii) 5.00%, as of the October 1, 2023 valuation date; and (iii) 5.90%, as of the October 1, 2023 valuation date.

2.    Court Analysis

At the outset, the court emphasizes that the RERC and PwC Survey data reflects a forecast of regional and institutional investors required or expected equity return on a 100% cash transaction.[13]    Stated differently, "[t]he RERC and [PwC] Korpacz data is based upon all cash transactions." Hull Junction Holding Corp., 16 N.J. Tax at 102. However, the band of investment technique employs both a mortgage financing component, and a cash equity investment component. Thus, as keenly observed by Judge Kuskin, "[w]here the cash investment, *i.e.,* the equity investment, is only 25%-30% of the total investment, the equity dividend rate would tend to be lower than the all[-]cash rate." Ibid. Accordingly, the court finds that the equity dividend and capitalization rates reflected in the RERC and PwC Survey investor data are not necessarily

---

[11]  60% LTV x 7.73% constant = 4.638%; 40% x 7.00% = 2.80%; 4.638% + 2.80% = 7.438%.
[12]  60% LTV x 6.84% constant = 4.104%; 40% x 4.50% = 1.80%; 4.104% + 1.80% = 5.904%.
[13]  https://rerc.com/img/sample-realestate.pdf.






an accurate gauge of the equity dividend and capitalization rates that would be employed in a transaction that involves between 50% to 60% mortgage financing, as proposed by the experts in these matters.

Additionally, the court highlights that RERC defines net operating income as the "current income of a property net of all operating expenses, but before any reserves, debt service, capital expenditures, tenant improvements and leasing commissions" (emphasis added).[14]   Thus, in calculating the capitalization rates reported in the RERC surveys, a property's annual real estate taxes have been deducted from its gross income.  However, it is a well-settled principle of New Jersey local property tax valuation that "[i]nclusion of real estate taxes as an operating expense is not permitted because the amount of real estate taxes are ultimately determined as a result of this court's finding of value . . . ." Spiegel v. Town of Harrison, 18 N.J. Tax 416, 427 (Tax 1999).  In sum, the capitalization rates proffered by RERC are not an entirely accurate representation of capitalization rates that would be employed in local property tax matters before the New Jersey Tax Court.

Finally, the court underscores that the RERC and PwC Survey data reflects hypothetical leased fee valuations, a method of valuation not accepted by the Tax Court in local property matters.[15]   Thus, the data extracted from a hypothetical leased fee valuation of property is not

---

[14]  https://rerc.com/img/sample-realestate.pdf.

[15]   A leased fee approach values the "ownership interest held by the lessor, which includes the right to the contract rent specified in the lease plus the reversionary right when the lease expires." Appraisal Institute, The Appraisal of Real Estate 72 (14th ed 2013).  The leased fee approach is materially influenced by the leasehold interest and the stream of rental income, it is often not a reliable indicator of true or fair market value. A "leased fee. . . [valuation is] of dubious usefulness. The remaining term of a lease, the creditworthiness of the tenants, the influence of atypical lease clauses and stipulations, and other factors can affect the value . . . causing the sum to be less than or greater than the value of the fee simple estate." Id. at 505.  Because a leased fee approach does






necessarily probative of how the fee simple valuation would be arrived at, which this court is charged with doing in these matters.

Therefore, for the foregoing reasons, the court places little weight on the RERC and PwC Survey data in determining the base capitalization rates that should be applied to the subject property's reconstructed net operating income. Although the court recognizes that the RERC and PwC Survey data are available marketplace data sources, the court does not find that they should be the principal data sources for discerning the equity dividend and capitalization rates for the subject property. As eloquently stated in The Appraisal of Real Estate, when developing a capitalization rate, published surveys are an adequate source of "support rather than as primary evidence of a capitalization rate." The Appraisal of Real Estate 466 (14th ed 2013).

Additionally, the court places little weight on the CoStar Hackensack/Teaneck Multi-Family Submarket report. Although the CoStar report identifies the annual number of sale transactions and the perceived quality of the apartment buildings sold, it offers little insight into the size of the buildings sold, the composition of the apartment units, and financing terms, if any, for these transactions. The report does not provide interest rates, loan-to-value ratios, amortization terms, or loan types. Additionally, it offers no meaningful insight into how the reported capitalization rates were derived, and whether these were all-cash transactions.

Rather, the court concludes that the ACLI tables provide the most meaningful data because they are not polluted or impacted by questions of whether it involves all cash transactions, or how

---

not always represent the value of the fee simple interest, this court has rejected conclusions of value premised upon the leased fee interest in property. Marina Dist. Development Co., LLC v. City of Atlantic City, 27 N.J. Tax 469, 488 (Tax 2013), aff'd 28 N.J. Tax 568 (App. Div. 2015); Pine Plaza Associates, L.L.C. v. Hanover Twp., 16 N.J. Tax 194, 199 (Tax 1996); Harclay House v. East Orange City, 18 N.J. Tax 564 (Tax 2000); International Flavors & Fragrances, Inc. v. Union Beach Borough, 21 N.J. Tax 403, 423 (Tax 2004).






potential survey recipients perceived hypothetical transactional questions.  Although not perfect, the ACLI tables provide national data on actual financing transactions, identifying the number of transactions in each category, the interest rates, loan types, loan amortization periods, and the capitalization rates (thereby permitting the extraction of equity dividend rates), to enable the court to discern a capitalization rate for the subject property under the band of investment technique.[16]

      a.   Loan-to-Value Ratios

The court highlights that both experts concluded that the loan-to-value ratios, as of the October 1, 2022, and October 1, 2024 valuation dates, should be 60%.  The court finds the experts' conclusions are reasonable and supported by the data.[17]  Thus, the court accepts a 60% loan-to-value ratio as of the October 1, 2022 and October 1, 2024 valuation dates.

In addition, the court's review of the 3rd quarter 2023 ACLI data reveals that under the apartment building category: (i) all loan types, the average loan-to-value ratio was 56.74%; (ii) fixed rate loans, the average loan-to-value ratio was 58.82%; (iii) floating rate loans, the average loan-to-value ratio was 59.24%; (iv) in the Mid-Atlantic region, the average loan-to-value ratio

---

[16]  Although the court finds that ACLI provides meaningful data for gauging the accuracy of the loan-to-value ratios, amortization terms, interest rates, and equity dividend rates employed by the experts, the court readily acknowledges that the transactions summarized therein are generally, institutional grade investments.  The subject property is an aging garden style multi-family apartment building of average quality and condition, and thus, may not be categorized as an institutional grade investment.  Therefore, the applicable the loan-to-value ratios, amortization terms, interest rates, and equity dividend rates may be outside of the parameters of the ACLI data.

[17] The court's review of the ACLI Investment Bulletins reveals the following: (i) as of the October 1, 2022 valuation date, all types of apartment loans nationally bore a 57.58% loan-to-value ratio, fixed rate apartment building loans bore a 58.70% loan-to-value ratio, and adjustable rate apartment building loans bore a 56.76% loan-to-value ratio.  Moreover, fixed rate apartment building loans in the Mid-Atlantic region bore a loan-to-value ratio of 52.98%; and (ii) as of the October 1, 2023 valuation date, all types of apartment loans nationally bore a 56.74% loan-to-value ratio, fixed rate apartment building loans bore a 58.82% loan-to-value ratio, and adjustable rate apartment building loans bore a 59.24% loan-to-value ratio.  Moreover, fixed rate apartment building loans in the Mid-Atlantic region bore a loan-to-value ratio of 54.50%.






was 54.50%; and (v) all loan types, having less than 200 units, the average loan-to-value ratio was 57.91%. Therefore, the court finds Liberty Street's expert's testimony and conclusion to be more credible, that, as of October 1, 2023, a 60% loan-to-value ratio should be applied. Accordingly, the court accepts and will apply a 60% loan-to-value ratio as of the October 1, 2023 valuation date.

      b.    Amortization Term

According to Liberty Street's expert, the survey participants that provide data under the ACLI tables are obtaining preferrable loan amortization terms, that are atypical for a property like the subject property. In his opinion, based on discussions with market participants, commercial loans in the New Jersey marketplace for properties like the subject property are amortized on a 25-year term. Thus, Liberty Street's expert concluded a loan amortization term of 25 years should be applicable to the subject property as of the October 1, 2022, October 1, 2023, and October 1, 2024 valuation dates.

According to Little Ferry's expert, after reviewing the ACLI tables, he conferred with market participants in the Bergen County market to confirm that the ACLI data was consistent with and representative of the Bergen County market. Based on Little Ferry's expert's review of the ACLI data and his discussions with Bergen County market participants, commercial loans are generally amortized over a 30 to 35-year term. Thus, Little Ferry's expert concluded a loan amortization term of 30 years should be applicable to the subject property as of the October 1, 2022 valuation date, and a loan amortization term of 35 years should be applicable to the subject property as of the October 1, 2023 and October 1, 2024 valuation dates.

The court's review of the experts' reproduced data from the 3rd quarter 2022, 3rd quarter 2023, and 3rd quarter 2024 ACLI tables reveal that under the apartment building category: (i) fixed rate loans, the average amortization periods were 39, 42, and 40 years; (ii) fixed rate loans, between






$2,000,000 to $4,999,000, the average amortization periods were 28, 30, and 28 years; (iii) fixed rate loans, Mid-Atlantic region, the average amortization periods were 29, 35, and 33 years; and (iv) all loan types, with having than 200 units, the average amortization periods were 32, 35, and 40 years.

Therefore, the court finds Little Ferry's expert's testimony and conclusion that a 30-year amortization period, as of the October 1, 2022 valuation date, to be more credible and supported by the market data.

However, the court must reject both Liberty Street's expert's and Little Ferry's expert's amortization period conclusions for the October 1, 2023 and October 1, 2024 valuation dates. The court places primary reliance on the ACLI table 8, fixed rate apartment loans having a loan amount between $2,000,000 to $4,999,000. Given the experts' valuation conclusions for the subject property and a 60% loan-to-value ratio (as set forth above), a prospective purchaser of the subject property would anticipate incurring a mortgage loan approximately between $2,700,000 to $3,576,000 and a loan amortization period of between 28 to 30 years, as of October 1, 2023 and October 1, 2024 valuation dates.

Therefore, the court finds that a 30-year amortization period is more accurate and supported by the market data. Accordingly, the court will apply a 30-year amortization period as of the October 1, 2023 and October 1, 2024 valuation dates.

        c.    Mortgage Interest Rates

The court highlights that both experts concluded that the mortgage interest rate, as of the October 1, 2024 valuation date, should be 6.00%. The court finds the experts' conclusions are





reasonable and supported by the data.[18]  Thus, the court accepts a 6.00% mortgage interest rate, as of the October 1, 2024 valuation date.

In addition, the court's review of the 3rd quarter 2022 ACLI data reveals that under the apartment building category: (i) fixed rate loans, the average interest rate was 4.77%; (ii) fixed rate loans, between $2,000,000 to $4,999,000, the average interest rate was 4.90%; (iii) fixed rate loans, Mid-Atlantic region, the average interest rate was 4.58%; (iv) all loan types, with having than 200 units, the average interest rate was 4.92%; and (v) all loan types, having a loan amount of $50,001 - $75,000 per unit was 4.66%. Therefore, the court finds Liberty Street's expert's testimony and conclusion to be more credible, that, as of October 1, 2022, a 4.75% mortgage interest rate should be applied.  Accordingly, the court accepts and will apply a 4.75% mortgage interest rate as of the October 1, 2022 valuation date.

Finally, the court's review of the 3rd quarter 2023 ACLI data reveals that under the apartment building category: (i) fixed rate loans, the average interest rate was 5.91%; (ii) fixed rate loans, between $2,000,000 to $4,999,000, the average interest rate was 6.24%; (iii) fixed rate loans, Mid-Atlantic region, the average interest rate was 5.77 %; (iv) all loan types, with having than 200 units, the average interest rate was 6.04%;[19] and (v) all loan types, having a loan amount of $50,001 - $75,000 per unit was 6.68%.[20]  Therefore, the court finds that, as of October 1, 2023,

---

[18] The court's review of the 3rd quarter 2024 ACLI data reveals that under the apartment building category: (i) fixed rate loans, the average interest rate was 5.79%; (ii) fixed rate loans, between $2,000,000 to $4,999,000, the average interest rate was 6.31%; (iii) fixed rate loans, Mid Atlantic region, the average interest rate was 5.85%; and (iv) all loan types, with having than 200 units, the average interest rate was 5.94%.

[19] Little Ferry's expert's appraisal report incorrectly reported the interest rate for this category of loan as 4.92%.

[20] Little Ferry's expert's appraisal report incorrectly reported the interest rate for this category of loan as 5.70%.






Liberty Street's expert's 6% mortgage interest rate conclusion is more credible and should be applied. Accordingly, the court will apply a 6% mortgage interest rate as of the October 1, 2023 valuation date.

        d.    <u>Equity Dividend Rates</u>

Liberty Street's expert testified that he reviewed the RERC, PwC, and ACLI data in deriving his equity dividend rates. However, according to Liberty's Street's expert, the ACLI and PwC data do not contain information on non-institutional grade properties. Thus, according to Liberty Street's expert, "it's really hard to compare equity rates from ACLI [and PwC] to a property like this that's not institutional." In Liberty Street's expert's opinion, the subject property "falls somewhere in that range" between RERC's Second Tier Investment Properties and Third Tier Investment Properties. Therefore, he primarily relied on the RERC data to discern his equity dividend rates. In addition, Liberty Street's expert expressed that, in determining equity dividend rates, it is important to compare equity dividend rates to United States Treasury rates. In his opinion, as United States Treasury rates rise and fall, so do equity dividend rates. In his opinion, the United States Treasury rates would represent the "bottom" or floor for equity dividend rates.

Little Ferry's expert testified that he relied on the extracted equity dividend rates from the ACLI tables in arriving at his equity dividend rates. In Little Ferry's expert's opinion, the subject property is "an investment-grade property . . . [and] it does qualify into a category for an institutional investor." Little Ferry's expert highlighted the attributes that he felt would be important to an institutional investor, including having stable tenancies, favorable location features (close to mass transit and access to Manhattan), rent growth, and historically high asking rents. Little Ferry's expert testified that he also compared or performed a "check" of his concluded base capitalization rates to the reported ACLI, PwC National Apartment Market and CoStar






Hackensack/Teaneck Multi-Family Submarket capitalization rates. In addition, in Little Ferry's expert's opinion there is no correlation between United States Treasury rates and equity dividend rates.

The court's own review of the 3rd quarter 2022 ACLI data reveals that under the apartment building category: (i) fixed rate loans, the extracted average equity dividend rate was 2.72%; (ii) fixed rate loans, between $2,000,000 to $4,999,000, the extracted average equity dividend rate was 4.17%; (iii) fixed rate loans, Mid-Atlantic region, the extracted average equity dividend rate was 3.72%;[21] (iv) all loan types, having less than 200 units, the extracted average equity dividend rate was 3.78%; and (v) all loan types, having a loan amount of between $50,001 - $75,000 per unit, was 4.93%.

In addition, as of the October 1, 2022 valuation date, the United States Treasury rates ranged from 3.79% (for a 30-year treasury bond) to 4.06% (for a 5-year treasury note). Moreover, although the court affords it little weight, the RERC investor expected equity return on a 100% cash transaction reported equity dividend rates ranging from 4.8% to 8.8% and averaging 6.4%, for East Second Tier Apartments; and 5% to 9% and averaging 7.3%, for East Third Tier Apartments.

The court's review of the 3rd quarter 2023 ACLI data reveals that under the apartment building category: (i) fixed rate loans, the extracted average equity dividend rate was 3.63%; (ii) fixed rate loans, between $2,000,000 to $4,999,000, the extracted average equity dividend rate was 3.75%; (iii) fixed rate loans, Mid-Atlantic region, the extracted average equity dividend rate was 2.44%; (iv) all loan types, having less than 200 units, the extracted average equity dividend rate

---

[21] Little Ferry's expert's appraisal report incorrectly reported the extracted equity dividend rate for this category was 2.31%.





was 3.63%;[22] (v) all loan types, having a loan amount of $50,001 - $75,000 per unit was 3.32%.[23]

In addition, as of the October 1, 2023 valuation date, the United States Treasury rates ranged from 4.60% (for a 5-year treasury note) to 4.73% (for a 30-year treasury bond). Moreover, although the court affords it little weight, the RERC investor expected equity return on a 100% cash transaction reported equity dividend rates ranging from 6% to 9% and averaging 7.10%, for East Second Tier Apartments; and 5.5% to 9.3% and averaging 7.7%, for East Third Tier Apartments.

The court's review of the 3rd quarter 2024 ACLI data reveals that under the apartment building category: (i) fixed rate loans, the extracted average equity dividend rate was 4.39%; (ii) fixed rate loans, between $2,000,000 to $4,999,000, the extracted average equity dividend rate was 6.77%; (iii) fixed rate loans, Mid-Atlantic region, the extracted average equity dividend rate was 4.14%; (iv) all loan types, having less than 200 units, the extracted average equity dividend rate was 5.33%; and (v) all loan types, having a loan amount of $50,001 - $75,000 per unit was 4.93%.[24]

In addition, as of the October 1, 2024 valuation date, the United States Treasury rates ranged from 3.51% (for a 5-year treasury note) to 4.08% (for a 30-year treasury bond). Moreover, although the court affords it little weight, the RERC investor expected equity return on a 100% cash transaction reported equity dividend rates ranging from 5.5% to 9% and averaging 7%, for East Second Tier Apartments; and 6% to 9.3% and averaging 7.8%, for East Third Tier

---

[22] Little Ferry's expert's appraisal report incorrectly reported the extracted equity dividend rate for this category was 3.78%.

[23] Little Ferry's expert's appraisal report incorrectly reported the extracted equity dividend rate for this category was 3.51%.

[24] This data was reported by Little Ferry's expert and produced in a chart in his appraisal report.






Apartments.

Although the court recognizes that the subject property possesses a good location, access to public transportation, is close to Manhattan, and has historically high asking rents, it nonetheless is a small, aging garden-style multi-family dwelling in average condition with limited amenities. For those reasons, the court finds that it does not comprise an institutional grade property but rather is a good quality "investment-grade property," as opined by Little Ferry's expert.[25] The court further agrees with Little Ferry's expert that, in general, the ACLI tables provide the most meaningful evidence of equity dividend rates. However, because the ACLI tables offer data and information on institutional-grade properties, the court finds that the equity dividend rates for the subject property would likely fall slightly above the upper limits of the ACLI data ranges.

Accordingly, based on the court's review of the ACLI data, and in consideration of each expert's testimony, the court finds that: (i) as of the October 1, 2022 valuation date, a 4.875% equity dividend rate is most credible and supported by the market evidence; (ii) as of the October 1, 2023 valuation date, a 4.375% equity dividend rate is most credible and supported by the market evidence; and (iii) as of the October 1, 2024 valuation date, a 5.75% equity dividend rate is most credible and supported by the market evidence.

e. Base Capitalization Rates

Having made findings regarding the most credible mortgage interest rates, loan-to-value ratios, amortization periods, and equity dividend rates, the court concludes the following base

---

[25] Institutional-grade property is defined as "real property investments that are sought out by institutional buyers and have the capacity to meet generally prevalent institutional investment criteria. These investments are typically characterized by the magnitude of the investment and the size and quality of the property." Dictionary of Real Estate Appraisal, at 102. Investment property is defined as "property purchased for the primary purpose of earning a return on the investment, in the form of rent, capital gain, or both." Id. at 104.






capitalization rates under the Band of Investment technique: (i) as of the October 1, 2022 valuation date, a base capitalization rate of 5.71%;[26] (ii) as of the October 1, 2023 valuation date, a base capitalization rate of 6.07%;[27] and (iii) as of the October 1, 2024 valuation date, a base capitalization rate of 6.62%.[28] The effective tax rates for Little Ferry are as follows: (i) 2.54% (2.74% x stipulated 92.60% average ratio = 2.54%), as of October 1, 2022;[29] (ii) 2.37% (2.50% x stipulated 94.61% average ratio = 2.37%), as of October 1, 2023;[30] and (iii) 2.31% (2.44% x stipulated 94.69% average ratio = 2.31%), as of October 1, 2024.[31]

Therefore, after adding the effective tax rates, the loaded or overall capitalization rate is: (i) 8.25% (5.71% + 2.54% = 8.25%), as of the October 1, 2022 valuation; (ii) 8.44% (6.07% + 2.37% = 8.44%), as of the October 1, 2023 valuation date; and (iii) 8.93% (6.62% + 2.31% = 8.93%), as of the October 1, 2024 valuation date.

Accordingly, the court finds the true or fair market value of the subject property to be: (i) $5,212,000 ($430,000/8.25% = $5,212,121), as of the October 1, 2022 valuation date; (ii) $5,296,000 ($447,000/8.44% = $5,296,208), as of the October 1, 2023 valuation date; and (iii) $5,319,000 ($475,000/8.93% = $5,319,149), as of the October 1, 2024 valuation date.

### 3. Local Property Tax Assessment

Having reached conclusions of the subject property's true or fair market value, the court

---

[26] 6.260% constant x 60% = 3.756% and 4.875% x 40% = 1.95% (3.756% + 1.95% = 5.706%).

[27] 7.195% constant x 60% = 4.317% and 4.375% x 40% = 1.75% (4.317% + 1.75% = 6.067%).

[28] 7.195% constant x 60% = 4.317% and 5.75% x 40% = 2.3% (4.317% + 2.3% = 6.617%).

[29] The court notes that the Division of Taxation's published 2023 General Tax Rates reflect that Little Ferry has a General Tax Rate of 2.747% and Effective Tax Rate of 2.583%.

[30] The court notes that the Division of Taxation's published 2024 General Tax Rates reflect that Little Ferry has a General Tax Rate of 2.505% and Effective Tax Rate of 2.419%.

[31] The court notes that the Division of Taxation's published 2025 General Tax Rates reflect that Little Ferry has a General Tax Rate of 2.436% and Effective Tax Rate of 2.33%.






turns its attention to determining if adjustments to the subject property's 2023, 2024, and 2025 tax year assessments are warranted.

Under N.J.S.A. 54:51A-6(a), commonly referred to as Chapter 123, when the court is satisfied in a non-revaluation year by the evidence presented "that the ratio of the assessed valuation of the subject property to its true value exceeds the upper limit or falls below the lower limit of the common level range, it shall enter judgment revising the taxable value of the property by applying the average ratio to the true value of the property. . . ." N.J.S.A. 54:51A-6(a). This process involves application of the Chapter 123 common level range. N.J.S.A. 54:1-35a(b).

For the 2023 tax year, the subject property's ratio of assessed value, $4,796,200, to true or fair market value, $5,212,000 yields a ratio of 92.02% ($4,796,200/$5,212,000 = 92.02%), which is consistent with the parties stipulated equalized ratio of 92.60%, and thus, is within the Chapter 123 common level range. Consequently, no adjustment in the 2023 local property tax assessment is warranted. Liberty Street's complaint and Little Ferry's counterclaim for the 2023 tax year are hereby dismissed.

For the 2024 tax year, the subject property's ratio of assessed value, $4,970,500, to true or fair market value, $5,296,000, yields a ratio of 93.85% ($4,970,500/$5,296,000 = 93.85%), which is consistent with the parties stipulated equalized ratio of 94.61%, and thus, is within the Chapter 123 common level range. Consequently, no adjustment in the 2024 local property tax assessment is warranted. Liberty Street's complaint and Little Ferry's counterclaim for the 2024 tax year are hereby dismissed.

For the 2025 tax year, the subject property's ratio of assessed value, $5,653,100, to true or fair market value, $5,319,000, yields a ratio of 106.28% ($5,653,100/$5,319,000 = 106.28%), which is outside of the Chapter 123 common level range. Consequently, the subject property's






tax assessment for the 2025 tax year should be:

$5,319,000  x  .9469  =  $5,036,000 [ROUNDED]

Accordingly, a judgment establishing the local property tax assessment for the subject property for the 2025 tax year will be entered as follows:

| | |
|---|---|
| Land | $  880,000 |
| Improvement | $4,156,000 |
| Total | $5,036,000 |

Accordingly, contemporaneous herewith the court shall enter judgment affirming the subject property's 2023 and 2024 tax years assessments and reducing the subject property's 2025 tax year assessment.

Very truly yours,

/s/

Hon. Joshua D. Novin, J.T.C.

